**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| CHARLES MAY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 04 C 2796 |
| | ) | |
| VILLAGE OF GLENDALE HEIGHTS, | ) | |
| ROGER MABBITT, GARY HARRISON, | ) | |
| THOMAS BIALAS, MICHAEL MARRON, | ) | |
| and ROB SWARTZ, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

Before the court are defendants' motions to dismiss the complaint.  For the following reasons, the motions are granted.

## BACKGROUND

Plaintiff, Charles May, is a police officer employed by defendant Village of Glendale Heights (the "Village").  The other defendants in this action, who are also employed by the Village, are Chief of Police Roger Mabbitt; Deputy Chief of Police Gary Harrison; Commander Thomas Bialas; Commander Michael Marron; and Officer Rob Swartz.  May alleges that defendants deprived and conspired to deprive him of his civil rights in relation to a departmental investigation of plaintiff's conduct.  In addition, plaintiff claims that he was defamed.  The following pertinent

facts, which are taken as true for purposes of defendants' motions to dismiss, are drawn from the complaint.

Plaintiff was hired by the Village as a police officer in December 1993 and worked in the Patrol Division of the Police Department from then until January 1996, when he was promoted to the Investigations Division.  In January 1999, plaintiff was assigned to a Task Force that required him to be sworn as a federal law enforcement agent and to work under the supervision of a special agent of the Bureau of Alcohol, Tobacco, and Firearms ("ATF")[1] in conjunction with his duties as a Village police officer.

On May 1, 2002, plaintiff was removed from the ATF Task Force and reassigned to patrol duty on the midnight shift.  Officer Rob Swartz was assigned to take plaintiff's place on the Task Force. Prior to the reassignments, Swartz had "falsely told several individuals that plaintiff had been making profane and disparaging comments about [Deputy Chief Harrison], additionally, that plaintiff was under investigation by his department and the FBI for illegal wiretaps with the intent to harm plaintiff's reputation and to take his place on the ATF Task Force."  (Complaint, ¶ 17.)

Swartz met with certain ATF agents "under the guise of his needing to be brought up to speed on all of plaintiff's cases,

---

[1] The name of this agency was recently changed to the Bureau of Alcohol, Tobacco, Firearms, and Explosives.

however, with the actual intention of obtaining information that could be manipulated, and that actually was so manipulated, to injure the reputation and career of plaintiff." (Complaint, ¶ 18.) Shortly after the meeting, the ATF agent telephoned plaintiff and informed him that Swartz had left the meeting with a single report from one case file and that it was clear to the agent that "plaintiff was the subject of an internal investigation." (Complaint, ¶ 23.)

On June 5, 2002, Commander Bialas sent plaintiff a memorandum regarding "ATF Case Transition," in which Bialas requested plaintiff to submit a memorandum to his shift supervisors addressing several questions posed by Bialas regarding the Task Force reassignments. The same day, Commander Marron sent a memorandum to Chief Mabbitt entitled "Alleged False Reporting by Officer Charles May," which included allegations by Swartz regarding "inconsistencies" in plaintiff's reports. Marron stated in the memorandum that May's conduct (in relation to an undercover drug deal) violated four departmental rules concerning the categories "Reports and Booking," "Truthfulness/Cooperation," "Conduct Unbecoming a Member," and "Safety Violations." Marron recommended that an internal investigation of plaintiff be opened.

A series of additional memorandums among the parties ensued. On June 13, 2002, plaintiff received a memo from Mabbitt informing plaintiff that Deputy Chief Harrison would be conducting a formal

investigation and that Mabbitt had directed Harrison to complete the investigation within 45 days. Several additional memoranda concerning the matter were sent among the parties, including an August 2002 memorandum issued by Commander Bialas to Mabbitt (despite the fact that Harrison, and not Bialas, was conducting the investigation) requesting that plaintiff be suspended "not more than two days, but not less than one day."

In August 2002, plaintiff's supervisor, Sergeant Kenneth Graff (who is not a defendant), completed a quarterly performance evaluation in which plaintiff received the highest rating of "Exceeds standards" in all ten categories. Several months then passed with no resolution of the investigation of plaintiff (and evidently, very little to no activity).

On January 8, 2003, Harrison sent Mabbitt a memorandum regarding the investigation of plaintiff's conduct, summarizing Harrison's findings, sustaining two of the four rules violations originally outlined by Marron ("Truthfulness/Cooperation" and "Conduct Unbecoming a Member"), and also finding that plaintiff violated two rules concerning "Neglect of Duty/Incompetency/Inefficiency" and "Duty to Read/Understand/Comply with Orders." Harrison recommended a minimum of a one-day suspension for each sustained violation. Around the same time, plaintiff and other officers took the examination that is required to become a police sergeant.

After receiving Harrison's report in January, Mabbitt later issued plaintiff a written reprimand on March 27, 2003 for "Neglect of Duty" and "Conduct Unbecoming a Member." On April 30, 2003, Mabbitt sent plaintiff a memorandum stating his decision to convene a Review Board regarding the reprimand, as was within Mabbitt's discretion. Mabbitt agreed to be bound by the Review Board's decision.

Around the same time, on April 28, 2003, the Schaumburg Police Department, with whom plaintiff had applied for employment, received an anonymous telephone call; the caller said that plaintiff was a dirty cop and a liar and could not be trusted. In response, Schaumburg Police Officer Jerry McLaughlin called Harrison; Harrison told McLaughlin that plaintiff was a liar and could not be trusted.

Plaintiff alleges that also in April 2003, regarding the sergeant's examination, "Mabbitt, Bialas, Marron, and Harrison agreed to deliberately score plaintiff as low as possible to counterbalance the excellent scores plaintiff had received from his immediate supervisors, thereby maliciously causing plaintiff to be placed too low on the list for promotion, seventh out of eleven eligible, thereby causing plaintiff not to have been promoted,

causing plaintiff to lose approximately $8,000 in salary."
(Complaint, ¶ 57.)[2]

Plaintiff's supervisor, Sergeant Graff, was one of the five Review Board members appointed by Mabbitt to consider plaintiff's discipline. On June 1, 2003, Harrison encountered Graff and Graff's wife in the police station's parking lot and remarked that plaintiff was a dirty cop, a liar, and that plaintiff would never advance in the department. Plaintiff also alleges that Harrison and Bialas made efforts to influence the Review Board's decision by "suggesting to Graff [that] he see things their way." (Complaint, ¶ 59.)

On June 17, 2003, the Review Board issued a memorandum to Mabbitt. The Review Board found that each charge against plaintiff was "not sustained." On June 25, 2003, Mabbitt sent plaintiff a memorandum describing the Review Board's decision and stating:

> I had bound myself to accept the Review Boards [sic] decision at the onset of this matter and thus I concur with their findings that the charges specified are **Not Sustained.** This matter is closed and all reports will be sealed and placed in my safe so as not to become a part of your personnel jacket. The Review Board has asked that their written findings be sealed in this matter and

---

[2] Plaintiff elaborates on this allegation in his response to defendants' motions: "Plaintiff has alleged that Defendants conspired and by reasonable inference retaliated against him by agreeing to deliberately score Plaintiff so low on their portion of the sergeant's exam that he not be promoted." (Response at 6.) It appears that the "score" referred to in the complaint and the "portion of the exam" referred to in plaintiff's response are not really plaintiff's score on the *examination*, but, as defendants imply, the efficiency rating of plaintiff by his superiors, which is one of the factors considered in the decision whether to promote. <u>See generally</u> <u>Bigby v. City of Chicago</u>, 766 F.2d 1053, 1056 (7th Cir. 1985).

> not released to anyone.  That is a reasonable request and
> I have done so, placing the sealed document in my safe,
> not to be released or disseminated further.

(Complaint, Ex. AA.)  Mabbitt also apologized for "the delays in
the final decision on this matter" and stated that "however[,] it
was essential that this matter be very thoroughly reviewed."  (<u>Id.</u>)
At least as of the time the instant motions were briefed, plaintiff
continues to be employed by the Village as a police officer.  It is
plaintiff's position that defendants "caused [him] to have been
under departmental investigation for over one year with the
malicious intent that plaintiff suffer harm to his career and
reputation, which plaintiff did suffer."  (Complaint, ¶ 64.)

Plaintiff filed the complaint in this action on April 19,
2004, which sets forth the following claims: a § 1983 claim for
violation of plaintiff's First and Fourteenth Amendment rights
(Count I); a § 1985 claim for conspiracy to violate plaintiff's
First and Fourteenth Amendment rights (Count II); and state-law
claims for civil conspiracy (Count III) and defamation per se
(Count IV).  Each count is asserted against all of the defendants,
and the individual defendants are sued in their individual and
official capacities.

The Village has filed a motion to dismiss the complaint.  The
individual defendants have filed a separate motion to dismiss the
complaint as well.

## **DISCUSSION**

The purpose of a 12(b)(6) motion to dismiss is to test the sufficiency of the complaint, not to resolve the case on the merits. 5A Charles Alan Wright & Arthur R. Miller, <u>Federal Practice and Procedure</u> § 1356, at 294 (2d ed. 1990). When evaluating such a motion, the court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. <u>Hentosh v. Herman M. Finch Univ. of Health Sciences</u>, 167 F.3d 1170, 1173 (7th Cir. 1999). Dismissal is appropriate only if "'it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'" <u>Ledford v. Sullivan</u>, 105 F.3d 354, 356 (7th Cir. 1997) (quoting <u>Hishon v. King & Spalding</u>, 467 U.S. 69, 73 (1984)).

## A. **Federal Claims**

The complaint alleges that plaintiff's First and Fourteenth Amendment rights were violated. Defendants contend that plaintiff has failed to allege a violation of either Amendment.

### 1. **First Amendment**

Defendants argue that plaintiff has not properly alleged a First Amendment retaliation claim. Plaintiff wholly fails to respond to defendants' argument. To state a claim for retaliation in violation of the First Amendment, a public employee plaintiff must allege that a defendant has retaliated against him because of the plaintiff's constitutionally protected speech. <u>See Caldwell v.</u>

<u>City of Elwood</u>, 959 F.2d 670, 672 (7th Cir. 1992). The speech of a government employee warrants First Amendment protection if that speech addresses a matter of public concern. See <u>Delgado v. Jones</u>, 282 F.3d 511, 516 (7th Cir. 2002).

Plaintiff has failed to allege that he engaged in any speech whatsoever that caused retaliation, much less any protected speech. Plaintiff thus fails to allege an infringement of his First Amendment rights.

**2.  Fourteenth Amendment**

The next question is whether plaintiff has sufficiently pled facts that would establish a violation of the Fourteenth Amendment. Plaintiff alleges that his rights to property and liberty were violated without due process, but does not specify in the complaint exactly how or by what particular conduct those rights were violated. Defendants contend that plaintiff has not sufficiently pled a violation of either of these types of rights, and plaintiff has responded only to the argument concerning his property rights.

**a.  Liberty**

As for plaintiff's liberty interest, liberty of occupation is protected by the due process clause. See <u>Tierney v. Vahle</u>, 304 F.3d 734, 741 (7th Cir. 2002). It seems that plaintiff is attempting to state a claim for violation of this liberty interest through his defamation allegations. "[A]lthough defamation is not a constitutional tort when all it does is injure [a] plaintiff's

reputation, it becomes one when it deprives [a] plaintiff of his liberty of occupation, an interest protected by the due process clauses as reputation itself is not." Id. The Seventh Circuit has stated:

> The [Supreme] Court has emphasized that, to implicate a liberty interest, . . . charges of defamation must be coupled with the alteration of a legal status, such as the loss of an employment position.
> . . .
> [W]hen an employee claims that a government employer has infringed his liberty to pursue the occupation of his choice, the employee must show that (1) he was stigmatized by the defendant's conduct, (2) the stigmatizing information was publicly disclosed and (3) he suffered a tangible loss of other employment opportunities as a result of public disclosure. We also have noted that, at the heart of every claim that an employer has infringed an employee's liberty of occupation, is a charge that the "circumstances of the discharge, at least if they were publically stated, had the effect of blacklisting the employee from employment in comparable jobs." In such cases, the employee's good name, reputation, honor or integrity must be called into question in a manner that makes it virtually impossible for the employee to find new employment in his chosen field.

Townsend v. Vallas, 256 F.3d 661, 669-70 (7th Cir. 2001) (citations omitted); see also Hershinow v. Bonamarte, 735 F.2d 264, 266 (7th Cir. 1984) (public employee liberty interest cases have no application where the employee is not fired). Plaintiff does not allege any alteration of a legal status; he cannot and does not allege that he has been made unemployable because he continues to be employed as a Village police officer. Nor does he even allege that he was subjected to discipline that was made part of his personnel file or publicly disclosed. (In fact, he alleges quite

the opposite--that he was not subjected to any discipline as a result of the investigation.)  Accordingly, plaintiff fails to sufficiently allege the deprivation of a liberty interest.

        **b.**  **Property**

Defendants assert that plaintiff also has failed to sufficiently allege a violation of a property interest.  Plaintiff contends that he has alleged the violation of a substantive property right under the Illinois Uniform Peace Officers' Disciplinary Act (the "UPODA"), 50 ILCS 725/1 et seq., as well as the violation of a property right to be promoted to sergeant.

In Cain v. Larson, 879 F.2d 1424, 1427 (7th Cir. 1989), the Seventh Circuit held that the UPODA was essentially a statute that provides mere procedural guarantees that do not give rise to a constitutionally protected property interest.  However, the Court did find that the UPODA contains one provision prohibiting retaliatory actions that does provide a substantive guarantee: "No officer shall be discharged, disciplined, demoted, denied promotion or seniority, transferred, reassigned or otherwise discriminated against in regard to his or her employment, or be threatened with any such treatment as retaliation for or by reason of his or her exercise of the rights granted by this Act."  50 ILCS 725/7.

Plaintiff suggests that his reassignment from the Task Force to patrol duty was "retaliatory."  However, he does not argue, nor does the complaint allege, that the reassignment was in retaliation

for the exercise of any UPODA right. (Indeed, the reassignment is alleged to have occurred <u>before</u> the initiation of the investigation.) In addition, the complaint does not allege any other type of retaliation for the exercise of any UPODA right. Therefore, the only applicable UPODA provisions are procedural in nature, which plaintiff cannot rely upon to assert a constitutionally protected property interest.

Plaintiff also maintains that he has adequately alleged a protected property interest in a promotion to sergeant. We disagree. The Seventh Circuit has held that while there is a constitutionally protected property interest in continued civil service employment, there is no equivalent interest in promotion to a higher rank. <u>See</u> <u>Bigby v. City of Chicago</u>, 766 F.2d 1053, 1056- 57 (7th Cir. 1985). In <u>Bigby</u>, which involved the issue of a promotion from sergeant to lieutenant, the Court explained:

> [T]hese sergeants did not have a property interest in the rank, which they had not yet attained, of lieutenant. It is true that state law requires promotions of government employees, including policemen, to be "on the basis of ascertained merit and seniority in service and examination." . . . The statute and ordinance create an expectation that the examinations used for promotions in the civil service will be fair but, as the Illinois courts have held, not so firm and definite an expectation as to be "property" in a constitutional sense. For it is not the examination that the applicant is interested in-- no one likes taking tests--but the job. And with few lieutenancies available no one can have much confidence of doing well enough on the exam to become a lieutenant, especially since the grade on the examination is only one factor that the promoting authorities take into account in deciding whether to promote; the others are seniority and any evidence of merit besides the examination grade,

such as the officer's efficiency rating by his superiors. One has no "right" to a good efficiency rating from one's superior; rating is an exercise of the superior's discretion. Yet without such a rating one is most unlikely to be promoted to lieutenant.

Furthermore, the promoting officials are authorized to choose among the highest-rated applicants, and no criteria are provided for the choice. Construing the counterpart provision in the statute governing the police forces of smaller municipalities, <u>McCoy v. Board of Fire & Police Comm'rs</u>, 79 Ill. App. 3d 742, 744, 35 Ill. Dec. 70, 72, 398 N.E.2d 1020, 1022 (1979), holds that "the promotion of a patrolman to sergeant is one of discretion," so that the plaintiff "had no vested right to promotion." The same is true of promotion from sergeant to lieutenant. . . . Promotion to lieutenant's rank is not a matter of right and is not governed by fixed rules which if complied with automatically entitle the applicant to promotion. "To have a property interest . . . a person . . . must have more than a unilateral expectation of it. He must, instead, have a legitimate <u>claim of entitlement</u> to it."

<u>Id.</u> at 1056-57 (citations omitted).

Plaintiff makes no attempt to distinguish or even address <u>Bigby</u>.[3] As defendants point out, plaintiff does not allege any legitimate claim of entitlement to a promotion to sergeant or a single fact that would permit the inference that he would have been promoted but for defendants' conduct. (Nor does the complaint even allege that but for their alleged conduct, he would have been promoted). Accordingly, plaintiff fails to allege a violation of a constitutionally protected property interest.

_____

[3] <u>Malec v. Klatzco</u>, 101 F. Supp. 2d 1066 (N.D. Ill. 2000), the only authority relied upon by plaintiff, is distinguishable because the plaintiff in that case raised a First Amendment retaliation claim for failure to promote, not a Fourteenth Amendment due process claim.

Because plaintiff has failed to properly allege any constitutional deprivation, we need not reach defendants' arguments concerning <u>Monell</u>, an actionable conspiracy, or qualified immunity.

## B.  **State Law Claims**

Pursuant to 28 U.S.C. § 1367(c)(3), we are permitted to decline to exercise supplemental jurisdiction over a state-law claim if we have dismissed all claims over which we have original jurisdiction.  Having resolved the federal questions in this action, we decline to exercise supplemental jurisdiction over Counts III and Count IV, and they will be dismissed.

**CONCLUSION**

_____The Village of Glendale Heights's motion to dismiss is granted.  The individual defendants' motion to dismiss is granted.  Because we see no possibility that plaintiff could amend his complaint to state a claim upon which relief can be granted, the cause will be dismissed with prejudice.

DATE:    February 7, 2005

ENTER:   _____
         John F. Grady, United States District Judge